Thomas D. Neeleman, WSBA #33980
Jennifer L. Neeleman, WSBA #37374
NEELEMAN LAW GROUP, P.C.
1403 8th Street
Marysville, WA  98270
Telephone: (425) 212-4800
Facsimile: (425) 212-4802
Email: jennifer@neelemanlaw.com

The Honorable Timothy W. Dore
Location: Seattle

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | : | Case No.: 26-10388 |
|     H. BAKER'S, LLC | : | |
| | : | DEBTOR'S PLAN OF |
|     Debtor(s). | : | REORGANIZATION |
| | : | |
| | : | |

## ARTICLE I
## DEFINITIONS

**1.01**   **Definitions.**  Capitalized terms used in this Plan have the meanings stated on Schedule 1 hereto and incorporated within.

**1.02**   **Rules of Interpretation.**  The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

## ARTICLE II
## BACKGROUND

**2.01**   **History of the Debtor's Business and Events Leading to Bankruptcy**

The business was formed in 2018 and operates as a restaurant-style cocktail bar under the name Baker's.  Like others, the business was affected by the COVID-19 pandemic and experienced a decrease in overall business revenue during the shutdown.  Following the COVID-19 pandemic, the business continued to experience several significant challenges which affected

1

the overall financial stability of the business, including rising costs of labor and food and decrease in sales.

In an effort to retain employees and pay regular operating expenses, the Debtor obtained several short-term merchant cash advance loans with high interest.  The payments quickly became difficult to maintain, and the Debtor was severely limited in its cash flow. Unfortunately, once the Debtor was in the cycle of merchant cash advance loans, it became impossible to operate without additional loans to fund operating expenses while still maintaining the high payments to the lenders.

Facing mounting collection pressure, including aggressive collections efforts from the merchant cash advance lenders, a Petition under Chapter 11, Subchapter V was filed on February 6, 2026 (herein the "Petition Date") to reorganize the outstanding debt and to allow the Debtor to continue operating.    The Debtor is operating its business and managing its affairs as a debtor-in-possession under 11 U.S.C. §1184.

**2.02**.    **Insiders of the Debtor**

Insiders of the Debtor are:

Brian Smith – 100% Shareholder

**2.03**.    **Management of the Debtor Before and During the Bankruptcy**

Brian Smith served as manager of the Debtor prior to the Petition Date and is providing services to the Debtor until a potential sale of assets is final and closed.

**2.04**    **Significant Events During the Bankruptcy Case**

- The Chapter 11, Subchapter V Trustee was appointed on February 9, 2026.

- An *Application to Pay Pre-Petition Wages* was filed on February 10, 2026 and an order granting the application was entered on February 13, 2026 [ECF No. 27].

2

- The Initial Debtor Interview was held with the United States Trustee's Office and the Debtor on February 12, 2026.

- The 341 Meeting of Creditors was held on March 11, 2026 in which the Managing Member, Brian Smith, testified on behalf of the Debtor.

- An *Application to Employ Neeleman Law Group, P.C. as Counsel for the Estate* was filed on March 3, 2026 and an order granting the application was entered on March 4, 2026 [ECF. No. 33].

- The monthly operating report for February, 2026 has been filed. Debtor is working with Counsel to prepare and file the March, 2026 and April, 2026 reports.

### 2.05 **Projected Recovery of Avoidable Transfers**

The Debtor is not aware of any preferences or fraudulent conveyances which may be subject to avoidance actions.

### 2.06 **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets as of the date of Debtor's Plan are listed in **Exhibit A**.

### ARTICLE III
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11, Subchapter V of the Bankruptcy Code (the "Code") proposes to pay Creditors of the Debtor in the manner and consistent with the terms contained herein.

3

This Plan provides for Unclassified Administrative Claims, Unclassified Priority Claims, one Class of Secured Claims, and One Class of Unsecured Claims, and One Class of Equity Security Holders.

Each Creditor and/or Equity Security Holder should refer to Articles IV through VI of this Plan for information regarding the precise treatment of its Claim. Pursuant to 11 U.S.C. §1181(b) of the United States Bankruptcy Code, unless the Court orders otherwise, a Disclosure Statement providing further detail as pertaining to background and treatment of Claims is not required and will not be filed and circulated in this case. Accordingly, Creditors and Equity Security Holders should rely on the contents of this Plan only in determining whether to accept or reject this Plan's treatment of your Claim.

**YOUR RIGHTS MAY BE AFFECTED BY CONFIRMATION OF THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE**

## <u>ARTICLE IV</u>

### CLASSIFICATION OF CLAIMS AND INTERESTS

| **4.01** | <u>**Class 1**</u> | Secured Claim of US Small Business Administration |
|---|---|---|
| **4.02** | <u>**Class 2**</u> | All General Unsecured Claims allowed under § 502 of the U.S. Bankruptcy Code |
| **4.03** | <u>**Class 3**</u> | Equity Security Holder – Brian Smith |

### <u>ARTICLE V</u>
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
### AND PRIORITY TAX CLAIMS

**5.01** <u>**Unclassified Claims**</u>. Under section §1123(a)(1), Administrative Expense Claims, and Priority Tax Claims are not in classes.

4

**5.02 <u>Administrative Expense Claims</u>**.  Pursuant to 11 U.S.C. §1191(e) and 11 U.S.C. § 507(a)(2) each Holder of an Administrative Expense Claim allowed under §503 of the Code will be paid pursuant to the Plan term as provided for in Article VI below.

**5.03 <u>Priority Tax Claims</u>.**  Each Holder of a Priority Tax Claim will be paid the pursuant to the Plan term as provided for in Article VI below.

**<u>ARTICLE VI</u>**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

**6.01**  Claims and interests shall be treated and paid as follows:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Secured Claim of US Small Business Administration** | Impaired | The secured claim of US Small Business Administration will be paid $26,500.00.  The payment will be made from proceeds derived from the sale of assets and cash on hand as set forth in Article IX below. |
| **Class 2 – General Unsecured Claims** | Impaired | No funds will be available for distribution to Class 2 Claims. |
| **Class 3 – Equity Security Holders – Brian Smith** | Unimpaired | n/a |
| **Unclassified Claim of Rain City Partners, LLC** | n/a | The pre-petition claim of Rain City Partners, LLC will be paid an amount of $25,696.55 representing Tenant Improvement Allowances and Deferred Rent.  The payment will be made from proceeds derived from the sale of assets and cash on hand as set forth in Article IX below. |
| **Unclassified Claim of the Internal Revenue Service** | n/a | The priority claim of the IRS will be paid a prorata distribution with the priority claim of WA State Department of Revenue.  The claim will be paid $7,715.48.  The payment will be made from proceeds derived from the sale of assets and cash on hand as set forth in Article IX below. |

5

| | | |
|---|---|---|
| **Unclassified Claim of the Washington State Department of Revenue** | n/a | The priority claim of the WA State Department of Revenue will be paid a prorata distribution with the IRS. The claim will be paid $33,587.97. The payment will be made from proceeds derived from the sale of assets and cash on hand as set forth in Article IX below |
| **Unclassified Claim of Subchapter V Geoffrey Groshong** | n/a | The allowed claim of Subchapter V Trustee, Geoffrey Groshong, estimated to be $3,500.00 will be paid in full from proceeds from the sale of assets as set forth in Article IX below. |
| **Unclassified Claim of Neeleman Law Group, P.C.** | n/a | The claim of Neeleman Law Group, P.C., is estimated at $30,000.00. The allowed claim of  Neeleman Law Group, P.C. will be paid $5000.00 from funds held in trust and all available funds after payments as set forth above.  Neeleman Law Group, P.C. will reduce its claim to the amount of available funds.  It is anticipated Neeleman Law Group, P.C. will be paid approximately $20,000.00 |

## **ARTICLE VII**

### **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**7.01** <u>Disputed Claim</u>. A Disputed Claim is a Claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a Proof of Claim has been. filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no Proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.

**7.02** <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a final non-appealable order.

6

**7.03** **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VIII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01** **Assumed Executory Contracts and Unexpired Leases**.

The Plan constitutes a motion by the Debtor to assume each of the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as defined in Article X.

(a) Rain City Partners, LLC – Commercial Lease

**8.02** **Rejected Leases and Executory Contract**

The Plan constitutes a motion by the Debtor to conclusively reject all other executory contracts and/or unexpired leases not expressly assumed under section 8.01 above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A Proof of Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan. The failure of any such entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

## ARTICLE IX
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be funded with the proceeds from the sale of assets to Sunset Hill Group, LLC ("Buyer") for the sum of $100,000.00 pursuant to the terms of a Purchase and Sale Agreement ("Agreement") and cash on hand 30 days following the Effective Date in the anticipated amount of $12,000.00. The parties are in the process of finalizing the terms of the

Agreement.  An fully executed Letter of Intent signed by the Buyer and Seller is attached as Exhibit B.

It is anticipated funds will be paid no later than 30 days following the Effective Date. Buyer will remit payment to the trust account of Neeleman Law Group, P.C. for distribution to parties as forth in Article VI.  Neeleman Law Group, P.C. will distribute funds no later than 15 days following payment from Buyer.

### ARTICLE X
### GENERAL PROVISIONS

**10.01**  **Administrative Claims Bar Date.**  The deadline for submission of all Claims entitled to priority pursuant to §§507(a)(2) and (b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professionals and the Subchapter V Trustee, shall be thirty (30) days following the Effective Date.  Subject to §503(b)(1)(D) of the Bankruptcy Code, failure to file a Claim by this date shall conclusively bar the claimant from asserting its Claim, which Claim shall be forever barred, expunged and discharged.  If for any reason such Administrative Claim is incapable of being forever barred and disallowed, then the Holder of such Claim shall in no event have recourse to any property to be distributed pursuant to the Plan.  Post-petition statutory tax claims shall not be subject to any Administrative Expense Claims Bar Date.

**10.02**  **Effective Date of Plan**.  The Effective Date of this Plan is the first Business Day that is fourteen (14) calendar days following the entry of the Confirmation Order, unless such order is subject to a stay.

**10.03**  **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**10.04 Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**10.05 Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (Including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Washington govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**10.06 Substantial Consummation.** The Debtor will substantially consummate the Plan upon commencement of monthly payments as set forth above in Article VI and as defined by 11 U.S.C. §1101.

**10.07 Post-Confirmation Employment of Professionals.** The Reorganized Debtor shall be authorized to employ and compensate Professionals following Confirmation upon such terms and conditions as the Reorganized Debtor deem reasonable and appropriate without further notice or order of the Bankruptcy Court. If applicable, the Subchapter V Trustee may apply to this Court for approval of post-confirmation fees and costs, to be paid by the Reorganized Debtor.

**10.08 Post-Confirmation Reporting.** The Reorganized Debtor shall prepare and file the reports as required by Local Bankruptcy Rule 2015-1(e).

**10.09 Retention of Jurisdiction by the Bankruptcy Court.** The Bankruptcy Court retains jurisdiction until the entry of a Final Decree.

**10.10 Notice**. Any notices, requests, and demands required or permitted to be provided under the Plan, to be effective, shall be in writing either addressed as indicated below, or by electronic means to the email addresses below:

9

**Neeleman Law Group, P.C.**
1403 8th Street
Marysville, WA  98270
Email: jennifer@neelemanlaw.com
Telephone: (425) 212-4800

**Geoffrey Groshong**
600 Stewart Street, Suite 1300
Seattle, WA  98101
Email: geoff@groshonglaw.com
Telephone: (206) 508-0585

10.11  **Binding Effect**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity or Person regardless of whether or not (i) a Claim was scheduled, (ii) a Proof of Claim was filed, (iii) a Claim is an Allowed Claim or (iv) the Holder of such Claim voted to accept the Plan.

10.12  **Modification of Plan**

The Debtor may modify the Plan at any time before Confirmation of the Plan; however, the Court may require re-voting on the Plan.  The Reorganized Debtor may modify the Plan after Confirmation in accordance with the provisions stated in 11 U.S.C. §1193(c).

**ARTICLE XI**
**DISCHARGE**

11.01. Debtor is not subject to a discharge as the proposed plan is a liquidating plan.

**ARTICLE XII**
**DISBURSING AGENT**

12.01.  Neeleman Law Group, P.C. will act as the Disbursing Agent.

## ARTICLE XIII
## DEFAULT

**13.01  Event of Default**.  If the Debtor fails to make any payment as referenced in Article V and Article VIII, or to perform any other obligation required under the Plan for more than twenty (20) days after the time specified in the Plan, the party alleging such default shall serve upon the Debtor, its attorney, and in a case confirmed pursuant to §1191(b) of the Bankruptcy Code to the Trustee, a written notice of default.  The Debtor is in default under the Plan if the Debtor fails within twenty (20) days of receipt of the notice of default: (i) to cure the default to the party alleging such default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.  If the Debtor remains in default after the time specified above, such party may proceed with the remedies available to it under applicable law to recover amounts due, and to become due to such party, under the Plan.

## ARTICLE XIV
## CONFIRMATION REQUIREMENTS AND PROCEDURES

**14.01 Consensual Plan.**  To be confirmable, a Consensual Plan must meet the requirements listed in 11 U.S.C. § 1129(a) not including the contribution of all disposable income requirement of 11 U.S.C § 1129(a)15 of the Bankruptcy Code. These include the requirements that; the Plan must be proposed in good faith (11 U.S.C. §1129(3)); every impaired creditor or equity interest holder has voted to accept the Plan, without counting votes of insiders (11 U.S.C. §1129(8)); and the Plan must be feasible.

**14.02 Cramdown Plan.**  To be confirmable, a Cramdown Plan must be fair and equitable and meet the requirements listed in 11 U.S.C. §1129(a) but does not require that every class of claims and interest has accepted the plan (11 U.S.C. §1129(a)(8)) nor that at least one impaired class has accepted the Plan (11 U.S.C §1129(a)(10)).  A Cramdown Plan also requires that the

11

Debtor contribute all disposable income to the Plan during the Plan term and that the Plan payment be not less than the net disposable income of the Debtor (11 U.S.C §1191(c)).

**14.03 <u>Liquidation Analysis</u>** To confirm the Plan, the Court must find that all creditors and equity interest holders **who do not accept the Plan** will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached as **Exhibit C**.

**14.04**. **<u>Feasibility</u>** To confirm the Plan, the Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that funds will be available to begin making payments as proposed in Article V and based on the Debtor's projections, under the proposed Plan, the Debtor's funds are sufficient to make the payments as proposed over the life of the Plan without further reorganization.

**14.05**. **<u>Who May Vote or Object</u>**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Plan Proponent believes that Classes 1 and 2 are impaired and that holders of claims in each of the impaired classes are therefore entitled to vote to accept or reject the Plan.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. **The deadline for filing a proof of claim was March 25, 2026.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

*EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN,*

*YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.*

**14.06**. **Votes Necessary to Confirm the Plan**

To confirm a Consensual Plan, all impaired classes must have voted to accept the Plan. If all impaired classes have not voted to accept the Plan, a plan may still be confirmed by a cram down of non-accepting classes.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm a Cramdown Plan if the Plan meets the requirements referenced in Section 14.02 above. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the

13

requirements for consensual confirmation except for those requirements referenced in Section 14.02 above does not discriminate unfairly and is a fair and equitable toward each impaired class that has not voted to accept the Plan (11 U.S.C. §1191(b)).

## ARTICLE XV
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**15.01  Request for Confirmation.**  The Debtor requests Confirmation of the Plan in accordance with Section 1191 of the Bankruptcy Code.

**15.02  Recommendation**.  The Debtor believes that Confirmation and implementation of the Plan are the best alternative under the circumstances and urge all creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.

*YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO ALL REPRESENTATIONS AND PROJECTIONS CONTAINED HEREIN.*

Dated this 7th day of May, 2026

Respectfully submitted,

/s/ Brian Smith
By: Brian Smith
H. Baker's, LLC


NEELEMAN LAW GROUP, P.C.

 /s/ Jennifer L. Neeleman
Jennifer L. Neeleman
Attorney for Debtor-in-Possession