# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), dated as of June 9, 2026, is between H. Baker's, LLC, a Washington limited liability company ("Seller"), and Sunset Hill Group, LLC, a Washington limited liability company ("Buyer").

## RECITALS

Seller operates a bar and restaurant known as Baker's Seattle at 6408 32nd Ave NW, Seattle, WA 98107 (the "Business"). Seller is a debtor-in-possession in a bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court"), Case No. 26-10388 Buyer desires to purchase substantially all assets of the Business on the terms set forth herein, subject to Bankruptcy Court approval through the Seller's confirmed plan with 11 U.S.C. §363 protections.. The parties therefore agree as follows:

## ARTICLE I — DEFINITIONS

**"Action"** means any claim, suit, arbitration, proceeding, investigation, or governmental inquiry of any kind, whether at law or in equity.

**"Bankruptcy Court Approval Order"** means the entry of the confirmation order by Bankruptcy Court, in form and substance acceptable to Buyer in its reasonable discretion, approving this Agreement and authorizing the sale of the Purchased Assets to Buyer free and clear of all Encumbrances pursuant to 11 U.S.C. § 363.

**"Business Day"** means any day other than a Saturday, Sunday, or day on which commercial banks in Seattle, Washington are closed.

**"Encumbrances"** means all liens, security interests, pledges, charges, claims, options, encumbrances, and restrictions of any kind.

**"FF&E"** means all furniture, fixtures, equipment, smallwares, cooking and bar equipment, refrigeration, HVAC, POS systems, signage, décor, and other tangible personal property owned by Seller and used in the Business.

**"Governmental Authority"** means any federal, state, or local government or agency, including the LCB.

**"Intellectual Property"** means all intellectual property used in the Business, including trade names, logos, goodwill, copyrights, domain names, social media accounts and handles, menus, recipes, trade secrets, and all registrations and applications therefor.

**"Inventory"** means all food, beverages, alcohol and other consumables, paper goods, and cleaning supplies on hand at the Business as of the Closing Date.

**"Knowledge of Seller"** means the actual knowledge of Brian Smith, Managing Member, after reasonable inquiry of Seller's employees with responsibility for the relevant matter.

**"LCB"** means the Washington State Liquor and Cannabis Board.

**"LCB Approval"** means approval from the LCB of Buyer's liquor license application to operate the Business, on terms satisfactory to Buyer in its sole discretion.

**"Lease"** means the lease for the Business premises at 6408 32nd Ave NW, Seattle, WA 98107 (the "Premises"), including all amendments thereto.

**"Lease Assignment"** means the assignment of the Lease to Buyer (or entry into a new lease with the landlord) on terms satisfactory to Buyer in its sole discretion.

Doc ID: 3b0460ba897a85e5f8423ef106f10ccbc90e1452

**"Losses"** means all losses, damages, liabilities, judgments, fines, penalties, costs, and expenses, including reasonable attorneys' fees and investigation costs.

**"Material Adverse Effect"** means any event, condition, or development that has had, or would reasonably be expected to have, a material adverse effect on (a) the Purchased Assets taken as a whole, or (b) Seller's ability to consummate the transactions contemplated hereby; excluding, however, conditions generally affecting the restaurant industry or the economy, except to the extent they disproportionately affect the Business.

**"Permits"** means all permits, licenses, approvals, and certifications issued by any Governmental Authority required for or used in the Business, including food handler permits, the business license, and Seller's Liquor License.

**"Seller's Liquor License"** means Seller's license(s) issued by the LCB for the sale and service of alcohol at the Business.

**"Taxes"** means all federal, state, and local income, sales, use, transfer, payroll, employment, and other taxes, fees, and assessments of any kind, together with interest, penalties, and additions thereto.

**"Transaction Documents"** means this Agreement, Exhibit A (Closing Certificate, Bill of Sale, and Assignment), and Exhibit B (Form of Lease Assignment and Assumption Agreement).

## ARTICLE II — PURCHASE AND SALE

2.1 **Purchase and Sale.** Subject to the terms hereof and the Bankruptcy Court Approval Order, at Closing, Seller shall sell, assign, transfer, convey, and deliver to Buyer all of Seller's right, title, and interest in and to the Purchased Assets, free and clear of all Encumbrances, pursuant to 11 U.S.C. § 363.

2.2 **Purchased Assets.** The "Purchased Assets" means all assets of Seller used in or associated with the Business, other than the Excluded Assets, including:

(a) all FF&E, including the items listed on Schedule 2.2(a);

(b) all Inventory on hand at the Premises as of the Closing Date;

(c) all Intellectual Property, including the trade name "Baker's Bar Seattle" and all variants, together with all associated goodwill;

(d) all social media accounts, websites, domain names, phone numbers, email addresses, and login credentials associated with the Business;

(e) all customer lists, vendor lists, menus, recipes, business records, and operational records of the Business;

(f) all transferable Permits, including Seller's Liquor License to the extent transferable;

(g) all contracts, leases (including the Lease), and commitments listed on Schedule 2.2(g) (the "Assigned Contracts"). Assignment of the Assigned Contracts is effected by this Agreement and the Bankruptcy Court Approval Order; a separate counterpart assignment from each contract counterparty is not required except as expressly set forth in Exhibit B with respect to the Lease;

(h) all prepaid expenses, security deposits, and advance payments relating to the Business or the Premises; and

(i) all goodwill and going-concern value of the Business.

2.3 **Excluded Assets.** The "Excluded Assets" are: (a) all cash, cash equivalents, and bank account balances of Seller; (b) all accounts receivable existing as of the Closing Date; (c) Seller's corporate and entity records; (d) all insurance policies (but not proceeds attributable to damage to Purchased Assets); and (e) the assets listed on Schedule 2.3.

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

**2.4** **Assumed Liabilities.** At Closing, Buyer assumes only (a) obligations arising after the Closing Date under the Assigned Contracts (including the Lease, if the Lease Assignment is consummated), solely to the extent arising from events after Closing, and (b) any liabilities expressly listed on Schedule 2.4 (the "Assumed Liabilities"). Buyer does not assume any obligation under the Lease unless and until the Lease Assignment closes.

**2.5** **Excluded Liabilities.** Buyer shall not assume and has no liability for any obligation or liability of Seller of any kind, whether known or unknown, fixed or contingent (the "Excluded Liabilities"), including: (a) all Seller debts, payables, and accrued expenses; (b) all Taxes for any pre-Closing period; (c) all obligations to current or former employees, including wages, tips, tip pools, benefits, severance, and any WARN Act obligations; (d) all obligations under the Lease or relating to the Premises arising before Closing; (e) all liabilities in the Bankruptcy Case; (f) all pending or threatened claims against Seller; and (g) any environmental or health-code liability arising before Closing.

**2.6** **No Successor Liability.** Buyer is not a successor to Seller for any purpose. Buyer expressly disclaims any successor liability under any theory, including de facto merger or continuation of enterprise.

**2.7** **Purchase Price.** In consideration for the Purchased Assets, Buyer shall pay Seller One Hundred Thousand Dollars ($100,000.00) (the "Purchase Price") at Closing by wire transfer of immediately available funds to an account designated by Seller in writing at least three (3) Business Days before Closing.

**2.8** **Purchase Price Allocation.** The parties shall allocate the Purchase Price among the Purchased Assets as set forth on Schedule 2.8, prepared by Buyer and agreed to in good faith prior to Closing. Each party shall file all Tax returns consistently with such allocation.

**2.9** **Transfer Taxes.** All transfer, sales, use, or similar Taxes arising from the sale of the Purchased Assets shall be borne by Seller.

## ARTICLE III — CLOSING

**3.1** **Closing.** The closing ("Closing") shall take place remotely by electronic exchange of documents and signatures on a date mutually agreed by the parties, no later than ten (10) Business Days after all conditions in Article VII have been satisfied or waived (the "Closing Date").

**3.2** **Seller's Deliverables.** At Closing, Seller shall deliver: (a) Exhibit A (Closing Certificate, Bill of Sale, and Assignment), duly executed; (b) a lease assignment and assumption agreement in substantially the form attached hereto as Exhibit B (or such other form as approved by Buyer in its sole discretion), duly executed by Seller and the landlord; (c) a certified copy of the Bankruptcy Court Approval Order in full force and effect; (d) all keys, access codes, passwords, and login credentials for all Purchased Assets, including social media, email, and POS systems; (e) evidence of initiation of transfer of all transferable Permits, including Seller's Liquor License; and (g) such other documents as Buyer may reasonably request.

**3.3** **Buyer's Deliverables.** At Closing, Buyer shall deliver: (a) the Purchase Price by wire transfer; (b) a counterpart to Exhibits A and B, duly executed; and (c) such other documents as Seller may reasonably request.

## ARTICLE IV — REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer as of the date of this Agreement and as of the Closing Date as follows:

**4.1** **Organization and Authority.** Seller is a Washington limited liability company in good standing with full authority, subject to Bankruptcy Court approval, to execute, deliver, and perform this Agreement.

Doc ID: 3b0460ba697a85e5f8423ef106f10ccbc90e1452

This Agreement, upon Bankruptcy Court approval, constitutes the valid, binding, and enforceable obligation of Seller.

4.2 **Title to Purchased Assets.** Seller has good and valid title to all Purchased Assets, free and clear of all Encumbrances (other than those to be discharged by the Bankruptcy Court Approval Order). Upon Closing, Buyer will receive good and valid title to all Purchased Assets, free and clear of all Encumbrances.

4.3 **Permits and Liquor License.** Schedule 4.3 lists all Permits. Each Permit is valid and in full force and effect. Seller is not in material default under any Permit. Seller has received no written notice of any pending or threatened suspension, revocation, or non-renewal of any Permit, including Seller's Liquor License. To Seller's knowledge, there are no facts or circumstances that would reasonably be expected to result in the loss of Seller's Liquor License.

4.4 **Employees and Labor.** Schedule 4.4 lists all employees, contractors, and consultants of the Business, including title, compensation, and employment status. Seller is not party to any collective bargaining agreement. Seller has, in all material respects, properly classified employees and contractors, complied with all applicable wage and hour laws (including minimum wage and overtime), and properly maintained all tip pools and tip credits in compliance with applicable law. All wages, tips, and compensation due to current and former employees have been paid. There are no pending or, to Seller's knowledge, threatened wage, tip pool, or employment claims against Seller.

4.5 **Taxes.** All Taxes of Seller relating to the Business due prior to Closing have been or will be timely paid. All required Tax returns have been or will be timely filed and are true and correct in all material respects. There are no pending or, to Seller's knowledge, threatened Tax audits or assessments relating to the Business.

4.6 **Legal Proceedings.** Except as disclosed in the Bankruptcy Case, there are no Actions pending or, to Seller's knowledge, threatened against Seller (a) relating to the Purchased Assets, (b) that would give rise to an Excluded Liability, or (c) that would prevent or delay the Closing.

4.7 **No Undisclosed Liabilities.** There are no material liabilities or obligations relating to the Business or the Purchased Assets other than (a) those disclosed in writing to Buyer before the date hereof, (b) Assumed Liabilities, or (c) obligations incurred in the ordinary course of business since the most recent financial records provided to Buyer.

4.8 **Intellectual Property.** Seller owns or has the right to use all Intellectual Property necessary for the operation of the Business. To Seller's knowledge, the Business does not infringe any third-party intellectual property rights. Seller has not transferred, licensed, or encumbered any Intellectual Property included in the Purchased Assets.

4.9 **Bankruptcy.** The Bankruptcy Case is pending under Chapter 11 Subchapter V of Title 11, Case No. 25-10388 in the United States Bankruptcy Court for the Western District of Washington. Subject to Bankruptcy Court approval, Seller has the authority to enter into this Agreement. Seller will use commercially reasonable efforts to obtain the Bankruptcy Court Approval Order in form and substance acceptable to Buyer, and is not aware of any facts that would materially impede such order.

4.10 **No Other Representations.** Except as expressly set forth in this Article IV, Seller makes no other representation or warranty. Nothing in this section limits Buyer's rights with respect to fraud.

## ARTICLE V — REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as of the date of this Agreement and as of the Closing Date as follows:

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

**5.1** **Organization, Authority, and Funds.** Buyer is a Washington limited liability company in good standing with full authority to execute, deliver, and perform this Agreement. This Agreement constitutes the valid, binding, and enforceable obligation of Buyer. Buyer has, and at Closing will have, immediately available funds sufficient to pay the Purchase Price.

**5.2** **Independent Investigation.** Buyer has had the opportunity to conduct its own independent investigation of the Business and the Purchased Assets. Except as expressly set forth in Article IV, Buyer has not relied on any representation or warranty of Seller.

## ARTICLE VI — PRE-CLOSING COVENANTS

**6.1** **Conduct of Business.** From the date hereof until the Closing Date, except as required by the Bankruptcy Case or consented to by Buyer in writing, Seller shall: (a) operate the Business in the ordinary course consistent with past practice; (b) maintain the Purchased Assets in good working order; (c) maintain all Permits in full force and effect; (d) not sell, encumber, or dispose of any Purchased Asset outside the ordinary course; (e) not enter any new contract or commitment relating to the Business involving payments exceeding $5,000 without Buyer's consent; (f) not terminate any key employee without Buyer's consent; and (g) promptly notify Buyer of any Material Adverse Effect, any damage to any Purchased Asset, any LCB or health authority communication, or any material development in the Bankruptcy Case.

**6.2** **Access.** Seller shall afford Buyer and its representatives reasonable access to the Premises, Purchased Assets, employees, and business records during normal business hours upon reasonable notice, for due diligence and Closing preparation.

**6.3** **Approvals Cooperation.** Seller shall (a) promptly seek entry of the Bankruptcy Court Approval Order in form and substance acceptable to Buyer; (b) cooperate with Buyer's LCB application, including providing all required information and documentation; (c) maintain Seller's Liquor License through the Closing Date; and (d) cooperate with Buyer to obtain the Lease Assignment.

**6.4** **Employee Matters.** Buyer may (but is not obligated to) make offers of employment to any employees of the Business on such terms as Buyer determines. Seller remains solely responsible for all employment-related obligations through the Closing Date, including all wages, tips, tip pools, benefits, and any termination or severance obligations for employees not hired by Buyer.

## ARTICLE VII — CONDITIONS TO CLOSING

**7.1** **Buyer's Conditions.** Buyer's obligation to close is conditioned on: (a) Seller's representations and warranties being true and correct in all material respects as of the Closing Date; (b) Seller having performed all pre-Closing covenants in all material respects; (c) the Bankruptcy Court Approval Order having been entered in form and substance acceptable to Buyer in its reasonable discretion, in full force and effect without stay; (d) the LCB Approval having been obtained on terms satisfactory to Buyer in its sole discretion; (e) the Lease Assignment having been obtained on terms satisfactory to Buyer in its sole discretion; (f) no Material Adverse Effect having occurred; (g) all Encumbrances on the Purchased Assets having been released or discharged pursuant to the Bankruptcy Court Approval Order; (h) no governmental order prohibiting the Closing being in effect; and (i) Seller having delivered all closing deliverables required by Section 3.2.

**7.2** **Seller's Conditions.** Seller's obligation to close is conditioned on: (a) Buyer's representations and warranties being true and correct in all material respects; (b) Buyer having performed all pre-Closing covenants in all material respects; and (c) Buyer having delivered all closing deliverables required by Section 3.3.

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

**7.3** **Frustration of Conditions.** Neither party may rely on a failure of any condition under this Article VII if such failure was caused by that party's own breach.

## ARTICLE VIII — INDEMNIFICATION

**8.1** **Survival.** Seller's representations and warranties in Article IV survive the Closing for twenty-four (24) months, except that (a) Sections 4.1 (Organization and Authority), 4.2 (Title), and claims for fraud survive indefinitely (together, the "Fundamental Representations"); (b) Section 4.5 (Taxes) survives until sixty (60) days after the applicable statute of limitations; and (c) Section 4.4 (Employees and Labor) survives for thirty-six (36) months. Buyer's representations survive for twenty-four (24) months.

**8.2** **Indemnification by Seller.** Seller shall indemnify, defend, and hold harmless Buyer and its members, managers, officers, employees, agents, successors, and assigns from and against all Losses arising out of: (a) any breach of Seller's representations or warranties; (b) any breach of Seller's covenants; (c) any Excluded Liability; or (d) any claim by a current or former employee or contractor arising from events before the Closing Date.

**8.3** **Indemnification by Buyer.** Buyer shall indemnify, defend, and hold harmless Seller and its members, managers, officers, employees, agents, successors, and assigns from and against all Losses arising out of: (a) any breach of Buyer's representations or warranties; or (b) any Assumed Liability.

**8.4** **Limitations on Seller's Liability.**

   (a) Seller's aggregate liability for indemnification under Section 8.2(a) (other than for Fundamental Representation breaches and claims listed in Section 8.4(b)) shall not exceed $150,000 (the "Cap").

   (b) Notwithstanding the foregoing, the Cap shall not apply to Seller's liability for: (i) breach of Fundamental Representations; (ii) breach of Section 4.4 (Employees) or Section 4.5 (Taxes); (iii) Excluded Liabilities; or (iv) fraud or intentional misrepresentation.

**8.5** **Indemnification Procedures.** The party seeking indemnification (the "Indemnified Party") shall promptly notify the other party (the "Indemnifying Party") in writing of any claim, describing it in reasonable detail. The Indemnifying Party may assume the defense of any third-party claim with counsel reasonably acceptable to the Indemnified Party; provided that it may not settle without the Indemnified Party's prior written consent (not unreasonably withheld) unless the settlement involves only money and a full release of the Indemnified Party. Failure to provide timely notice does not relieve the Indemnifying Party of its obligations except to the extent of actual material prejudice.

**8.6** **Exclusive Remedy.** Except for (a) fraud or intentional misrepresentation, (b) claims for specific performance or injunctive relief, and (c) claims arising from Excluded Liabilities, the indemnification rights in this Article VIII are the sole and exclusive remedy of each party for any breach of this Agreement. In no event shall either party be liable for consequential, punitive, or indirect damages; provided that this limitation does not apply to Excluded Liabilities, fraud, or third-party claims for which indemnification is owed hereunder.

## ARTICLE IX — TERMINATION

**9.1** **Termination Rights.** This Agreement may be terminated prior to Closing: (a) by mutual written consent; (b) by Buyer, upon written notice, if (i) the Bankruptcy Court Approval Order has not been entered within sixty (60) days after the date hereof, (ii) the Closing has not occurred by July 1, 2026 (the "Outside Date"), (iii) Seller has materially breached any representation, warranty, or covenant and such breach has not been cured within ten (10) Business Days after written notice, (iv) a Material Adverse Effect has occurred, or (v) Buyer exercises its sole-discretion right to terminate under Section 7.1(d) (LCB

Doc ID: 3b0460ba897a85e5f8423ef106f0ccbc90e1452

Approval) or 7.1(e) (Lease Assignment); (c) by Seller, if Buyer has materially breached any representation, warranty, or covenant and such breach has not been cured within fifteen (15) Business Days after written notice; or (d) by either party, if a final non-appealable governmental order prohibits the Closing.

9.2 **Effect of Termination.** Upon termination, this Agreement is void and of no further force or effect, except that Article X and this Section 9.2 survive, and nothing herein limits either party's right to seek damages for any intentional or willful pre-termination breach.

## ARTICLE X — MISCELLANEOUS

10.1 **Governing Law; Jurisdiction.** This Agreement is governed by the internal laws of the State of Washington. Subject to the Bankruptcy Court's jurisdiction, each party irrevocably submits to the exclusive jurisdiction of the state and federal courts in King County, Washington for any dispute arising hereunder, and waives any inconvenient-forum objection.

10.2 **Attorneys' Fees.** The prevailing party in any Action to enforce this Agreement is entitled to recover from the other party all reasonable attorneys' fees, costs, and expenses, including costs of appeal.

10.3 **Expenses.** Each party bears its own costs and expenses in connection with this Agreement and the transactions contemplated hereby.

10.4 **Notices.** All notices shall be in writing and deemed delivered (a) on personal delivery with written confirmation, (b) one (1) Business Day after deposit with a nationally recognized overnight courier, or (c) upon confirmed email transmission during business hours (next Business Day if after hours). Notices to Seller: H. Baker's, LLC, Attn: Brian Smith, 3706 42nd Ave. SW, Seattle, WA 98116, brian@bakersseattle.com (with a copy, which shall not constitute notice, to: Neeleman Law Group, Attn: Jennifer Neeleman (jennifer@neelemanlaw.com)). Notices to Buyer: Sunset Hill Group, LLC, Attn: Molly Ringe, 6408 32nd Ave NW, Seattle, WA 98107, (molly.ringe@gmail.com) (with a copy, which shall not constitute notice, to: Cloudbreak Legal PLLC, Attn: kanika@cloudbreaklegal.com).

10.5 **Entire Agreement; Amendments.** This Agreement (including all Schedules and Exhibits) is the entire agreement between the parties regarding the subject matter hereof and supersedes all prior negotiations and agreements, including the Letter of Intent dated May 7, 2026. No amendment or waiver is effective unless in writing and signed by both parties.

10.6 **Assignment.** Buyer may assign this Agreement to any affiliate or subsidiary without Seller's consent, provided Buyer remains liable for all obligations hereunder. Neither party may otherwise assign this Agreement without the other party's prior written consent.

10.7 **General Provisions.** If any provision of this Agreement is held invalid or unenforceable, the remaining provisions continue in full force. This Agreement may be executed in counterparts; electronic signatures have the same effect as originals. Time is of the essence. The word "including" means "including without limitation." This Agreement shall not be construed against any party as the drafter. No third party has any rights or remedies under this Agreement.

*[signature page follows]*

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**SELLER: H. BAKER'S, LLC,**

a Washington limited liability company

**By:** _____
**Name:** Brian Smith
**Title:** Managing Member
**Email:** brian@bakersseattle.com

**BUYER: SUNSET HILL GROUP, LLC,**

a Washington limited liability company

**By:** _____
**Name:** Molly Ringe
**Title:** Sole Manager
**Address:** 6408 32nd Ave NW, Seattle, WA 98107
**Email:** molly.ringe@gmail.com

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

## SCHEDULE 2.2(a)

## PURCHASED ASSETS — FF&E AND PREPAID DEPOSITS

- All FF&E
- All Inventory on site as of the date of this Agreement, less any selloff due to ordinary course operation of the Business prior to Closing.
- prepaid deposits as agreed between the parties prior to Closing
- Any other assets as agreed between the parties prior to Closing

Doc ID: 3b0460ba897a85e5f8923ef106f0ccbc90e1452

## SCHEDULE 2.2(g)

### ASSIGNED CONTRACTS

- Contracts as agreed between the parties prior to Closing

Doc ID: 3b0460ba897a85e5f8123ef106ff0ccbc90e1452

## SCHEDULE 2.3
## EXCLUDED ASSETS

- Excluded assets, if any, as agreed between the parties prior to Closing

Doc ID: 3b0460ba697a65e5f8423ef196ff0ccbc90e1452

## SCHEDULE 2.4
## ASSUMED LIABILITIES

None.

Doc ID: 3b0460ba897a85e5f8123ef106ff0ccbc90e1452

## SCHEDULE 2.8

## PURCHASE PRICE ALLOCATION

- As agreed between the parties prior to Closing

Doc ID: 3b0460ba897a85e5f8123ef106ff0ccbc90e1452

## SCHEDULE 4.3
## PERMITS AND LICENSES

- As agreed between the parties prior to Closing

Doc ID: 3b0460ba897a85e5f8423ef196ff0ccbc90e1452

## SCHEDULE 4.4

## EMPLOYEES

- As agreed between the parties prior to Closing

Doc ID: 3b0460ba897a85e5f8123ef196ff0ccbc90e1452

# EXHIBIT A

## CLOSING CERTIFICATE, BILL OF SALE, AND ASSIGNMENT

This Closing Certificate, Bill of Sale, and Assignment ("Exhibit A"), dated as of the Closing Date (as defined in the Agreement referenced below), is delivered by H. Baker's, LLC, a Washington limited liability company ("Seller"), to Sunset Hill Group, LLC, a Washington limited liability company ("Buyer"), pursuant to that certain Asset Purchase Agreement between Seller and Buyer dated as of June 9, 2026 (the "Agreement"). Capitalized terms used but not defined herein have the meanings given in the Agreement.

**1.      Closing Certificate.**

Seller hereby certifies to Buyer that, as of the Closing Date: (a) all representations and warranties of Seller in Article IV of the Agreement are true and correct in all material respects; and (b) Seller has performed and complied with all covenants and obligations required to be performed by Seller prior to Closing in all material respects.

**2.      Bill of Sale and Assignment.**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, transfers, conveys, and delivers to Buyer all of Seller's right, title, and interest in and to the Purchased Assets (as defined in the Agreement), free and clear of all Encumbrances, including without limitation:

(a)   all FF&E described in Schedule 2.2(a);

(b)   all Inventory on hand at the Premises as of the Closing Date;

(c)   all Intellectual Property, including the trade name "Baker's Bar Seattle," all social media accounts, domain names, menus, recipes, and all other Intellectual Property included in the Purchased Assets, together with all goodwill associated therewith;

(d)   all Assigned Contracts listed on Schedule 2.2(g) (other than the Lease, which is addressed in Exhibit B); and

(e)   all other Purchased Assets described in Section 2.2 of the Agreement.

The assignment of Intellectual Property contained in this Exhibit A is intended to be a complete assignment of all of Seller's right, title, and interest in such Intellectual Property for all purposes, without any reservation of rights. Because no Intellectual Property included in the Purchased Assets is registered with any Governmental Authority (including the USPTO or any state trademark office), no separate recordation assignment is required; however, Seller agrees, upon request and without further consideration, to execute any additional documents reasonably necessary to record or perfect Buyer's ownership of any Intellectual Property.

**3.      General.**

This Exhibit A is made pursuant to and subject to the Agreement. In the event of any conflict between this Exhibit A and the Agreement, the Agreement controls.

*[signature page follows]*

Doc ID: 3b0460ba897a85e5f8423ef106ff0ccbc90e1452

**SELLER: H. BAKER'S, LLC**

By: _____
Name: Brian Smith
Title: Managing Member


**BUYER: SUNSET HILL GROUP, LLC**

By: _____
Name: Molly Ringe
Title: Sole Manager

Doc ID: 3b0460ba897a85e5f8123ef106ff0ccbc90e1452

# EXHIBIT B

## FORM OF LEASE ASSIGNMENT AND ASSUMPTION AGREEMENT

This Lease Assignment and Assumption Agreement ("Exhibit B"), dated as of the Closing Date, is entered into among H. Baker's, LLC ("Assignor"), Sunset Hill Group, LLC ("Assignee"), and [LANDLORD NAME] ("Landlord"), and is delivered pursuant to that certain Asset Purchase Agreement between Assignor and Assignee dated as of June 9, 2026 (the "Agreement").

**1.     Assignment.**

Effective as of the Closing Date, Assignor hereby assigns, transfers, and conveys to Assignee all of Assignor's right, title, and interest in and under the Lease (as defined in the Agreement).

**2.     Assumption.**

Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to pay, perform, and discharge all obligations and liabilities of the tenant under the Lease arising on or after the Closing Date. Assignee does not assume any obligation or liability of Assignor under the Lease arising before the Closing Date.

**3.     Landlord Consent.**

Landlord hereby consents to the assignment set forth herein and confirms that (a) the Lease is in full force and effect, (b) there are no uncured defaults by Assignor under the Lease as of the date hereof, and (c) all conditions to assignment under the Lease have been satisfied.

**4.     General.**

This Exhibit B is made pursuant to and subject to the Agreement. In the event of any conflict, the Agreement controls.

*[signature page follows]*

Doc ID: 3b0460ba897a85e5f8423ef196ff6ccbc90e1452

**ASSIGNOR:  H. BAKER'S, LLC**

By:        _____
Name:     Brian Smith
Title:      Managing Member


**ASSIGNEE:  SUNSET HILL GROUP, LLC**

By:        _____
Name:     Molly Ringe
Title:      Sole Manager


**LANDLORD CONSENT:**

**[LANDLORD ENTITY NAME]**

By:        _____
Name:     _____
Title:      _____

Doc ID: 3b0460ba897a85e5f8423ef196ff0ccbc90e1452

 
| | |
|---|---|
| **Title** | Asset Purchase Agreement - Bakers Seattle - Sunset Hill... |
| **File name** | Final_Asset_Purch..._9_June_2026_.pdf |
| **Document ID** | 3b0460ba897a85e5f8123ef106ff0ccbc90e1452 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **06 / 10 / 2026** 05:06:38 UTC | Sent for signature to Molly Ringe (molly.ringe@gmail.com) and Brian Smith (brian@bakersseattle.com) from kanika@cloudbreaklegal.com IP: 97.113.164.17 |
| **VIEWED** | **06 / 10 / 2026** 05:13:39 UTC | Viewed by Molly Ringe (molly.ringe@gmail.com) IP: 45.143.82.134 |
| **SIGNED** | **06 / 10 / 2026** 05:21:59 UTC | Signed by Molly Ringe (molly.ringe@gmail.com) IP: 45.143.82.134 |
| **VIEWED** | **06 / 10 / 2026** 05:35:19 UTC | Viewed by Brian Smith (brian@bakersseattle.com) IP: 140.248.20.236 |
| **SIGNED** | **06 / 10 / 2026** 05:35:51 UTC | Signed by Brian Smith (brian@bakersseattle.com) IP: 140.248.20.236 |
| **COMPLETED** | **06 / 10 / 2026** 05:35:51 UTC | The document has been completed. |

Powered by  Dropbox Sign

Case 26-10388-TWD    Doc 54-2    Filed 06/09/26    Ent. 06/09/26 22:47:44    Pg. 20 of 20